**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CORDY ISME,**

Plaintiff,

v.

**HILLSBOROUGH TRANSIT AUTHORITY (HART),**

Defendant,
_______________________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CORDY ISME, by and through his undersigned counsel, sues Defendant, HILLSBOROUGH TRANSIT AUTHORITY (HART), and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action seeking damages and equitable relief against Defendant for unlawful employment practices, specifically national origin discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and state law claims for unpaid wages/benefits.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 2617(a)(2). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b) and Local Rule 1.04(b), as the unlawful employment practices occurred in Hillsborough County, Florida, and Defendant operates within this district.

4. Plaintiff has exhausted his administrative remedies by filing a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 511-2025-04112. The EEOC issued a Notice of Right to Sue on July 29, 2026. Plaintiff is filing this action within ninety (90) days of his receipt of the Notice. All conditions precedent to the filing of this action have been performed, have occurred, or have been waived.

## III. PARTIES

5. Plaintiff, Cordy Isme, is an adult male of Haitian national origin who resides in Seffner, Florida. He was employed by Defendant as a Bus Operator from April 18, 2016, until his retaliatory termination on March 16, 2026.

6. Defendant, Hillsborough Transit Authority (HART), is a regional transit agency doing business in Hillsborough County, Florida, and is an "employer" within the meaning of Title VII and the FMLA.

## IV. FACTUAL ALLEGATIONS

***Background of Discrimination and Hostile Work Environment***

7. Plaintiff began his employment with Defendant as a Bus Operator on April 18, 2016, and successfully performed his duties for approximately nine years.

8. Beginning in or around April 2025, Plaintiff was subjected to targeted harassment, discrimination, and intimidation based on his Haitian national origin by management, specifically Supervisor Yuri Chambers.

9. Supervisor Chambers arbitrarily enforced unwritten or selectively applied procedures—specifically, secondary bus walk-throughs at the rear gate—exclusively against Plaintiff and other Haitian employees, while non-Haitian and African American operators bypassed this policy without issue.

10. Despite Plaintiff's repeated internal complaints and incident reports filed in April, May, and June of 2025 regarding this discriminatory treatment, Defendant's management took no corrective action and instead allowed the harassment to escalate.

***Prior Retaliation and FMLA Interference***

11. On September 5, 2025, Plaintiff filed an internal complaint regarding harassment by a maintenance supervisor.

12. In direct retaliation, on September 12, 2025, Plaintiff was publicly removed from his post and brought before Managers Steven Fields and Keshia Brown. Manager Brown placed Plaintiff on Non-Working Pending Investigation status, confiscated his badge, and barred him from Defendant's property without providing a legitimate reason, admitting she "did not know the reason but would find out later."

13. On December 7, 2025, at approximately 11:36 a.m., Plaintiff notified Defendant of his need for FMLA-covered leave.

14. The following day, December 8, 2025, at approximately 7:15 p.m., Supervisor John Dixon retaliated against Plaintiff by issuing him an AWOL (Absent Without Leave) infraction concerning that protected FMLA absence.

15. Only after Plaintiff reported this unlawful action to the EEOC did Defendant remove the infraction on December 30, 2025, stating that it had been issued in error.

***Protected Activity and Ultimate Termination***

16. Faced with continued hostility, Plaintiff filed a formal Executive-Level Complaint with HART leadership, Human Resources, and administration on February 20, 2026, explicitly reporting ongoing retaliation, harassment, and hostile workplace conditions.

17. HART Business Ethics and Compliance Officer Matthew Whitesides acknowledged receipt of this complaint, yet Defendant afforded Plaintiff no protection.

18. Instead, on March 1, 2026, Defendant manufactured grounds for Plaintiff's termination. While Plaintiff was working his regularly scheduled, successfully bid run (#526) on bus #1705, dispatch unexpectedly instructed him to abandon his route and operate Routes 19 and 10 (run #467) instead. Plaintiff complied in good faith.

19. After completing the reassigned routes, Plaintiff parked downtown at 11:15 p.m., changed his sign to "Not in Service," and went to the breakroom to wait for his midnight departure.

20. A supervisor confronted Plaintiff in the breakroom, demanded his badge number, and ordered him to change the bus sign within two minutes. Plaintiff complied immediately, changing the sign at 11:42 p.m.

21. Despite his strict compliance, Defendant issued Plaintiff a Class B infraction on March 5, 2026, for allegedly “failing to follow instructions.”

22. On March 10, 2026, Superintendent Keshia Brown conducted a disciplinary hearing. Plaintiff requested a copy of the incident report to meaningfully defend himself, and Manager Brown explicitly denied him access to the allegations or evidence against him. Plaintiff elected to remain silent until afforded due process.

23. In immediate response, Manager Brown confiscated Plaintiff’s badge and mailbox key, placed him on Non-Working Pending Investigation status, and barred him from Defendant’s property.

24. On March 16, 2026, Defendant terminated Plaintiff’s employment—less than one month after he filed his protected Executive-Level Complaint.

***Damages: Retirement Benefits and Unpaid Accrued Leave***

25. At the time of his termination, Plaintiff had approximately eight years of service with Defendant and was fully vested in his retirement benefits. Defendant’s retaliatory termination permanently halted his ability to continue accruing retirement and other employment benefits.

26. Furthermore, as of his termination on March 16, 2026, Plaintiff's ADP Time Off – Balances Overview showed he had accrued 240 hours and 24 minutes of unused vacation time, alongside 292 hours and 53 minutes of CAT-Sick time, 8 hours of Floating Holiday, and 3 hours of regular Sick time.

27. Defendant's Employee Handbook specifically states that upon termination of employment, a regular employee shall be paid for unused annual leave at their rate of pay as of the date of termination.

28. In direct violation of its own policies, Defendant failed and refused to pay Plaintiff for his 240 hours and 24 minutes of accrued vacation time upon his termination.

## V. CAUSES OF ACTION

### COUNT I: NATIONAL ORIGIN DISCRIMINATION (TITLE VII)

29. Plaintiff incorporates paragraphs 1 through 28 as if fully set forth herein.

30. Plaintiff belongs to a protected class based on his national origin (Haitian).

31. Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment by subjecting him to disparate treatment, including selective enforcement of policies and unwarranted disciplinary action. At all times relevant to this Complaint, Plaintiff was highly qualified

for his position as a Bus Operator and met or exceeded Defendant's legitimate performance expectations.

32. Similarly situated employees outside of Plaintiff's protected class were treated more favorably by Defendant's management.

33. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered lost income, lost retirement benefits, and severe emotional distress.

**COUNT II: HOSTILE WORK ENVIRONMENT (TITLE VII)**

34. Plaintiff incorporates paragraphs 1 through 28 as if fully set forth herein.

35. Plaintiff was subjected to unwelcome harassment by Defendant's supervisors and managers based upon his national origin.

36. The harassment, which included aggressive confrontations, public humiliation, and unwarranted surveillance, was subjectively perceived by Plaintiff as hostile and abusive, and was objectively severe and pervasive enough that a reasonable person would find it altered the terms and conditions of employment.

37. Defendant knew or should have known of the harassment through Plaintiff's repeated internal complaints and incident reports, but failed to take prompt or effective remedial action.

## COUNT III: RETALIATION (TITLE VII)

38. Plaintiff incorporates paragraphs 1 through 28 as if fully set forth herein.

39. Plaintiff engaged in statutorily protected activity by filing an EEOC charge, internal incident reports, and the February 20, 2026 Executive-Level Complaint regarding discrimination and harassment.

40. Defendant took adverse employment action against Plaintiff, including removing him from his bid route, issuing a pretextual Class B infraction, placing him on unpaid suspension, and ultimately terminating his employment on March 16, 2026.

41. A direct, but-for causal connection exists between Plaintiff's protected activity and the adverse actions taken against him, evidenced by the unusually close temporal proximity between his highest-level complaint on February 20, 2026, and his termination on March 16, 2026, as well as the blatantly pretextual nature of the discipline imposed.

42. As a direct result, Plaintiff suffered significant economic and non-economic damages.

## COUNT IV: FMLA INTERFERENCE AND RETALIATION

43. Plaintiff incorporates paragraphs 1 through 28 as if fully set forth herein.

44. At all relevant times, Plaintiff was an "eligible employee" and Defendant was an "employer" within the meaning of the FMLA.

45. Plaintiff gave proper notice of his need for FMLA-covered leave on December 7, 2025.

46. Defendant interfered with Plaintiff's FMLA rights and retaliated against him by issuing an unwarranted AWOL infraction on December 8, 2025, specifically penalizing him for using protected leave.

47. As a direct result of Defendant's unlawful actions, Plaintiff suffered damages and is entitled to equitable relief, liquidated damages, and attorney's fees under 29 U.S.C. § 2617.

**COUNT V: BREACH OF IMPLIED CONTRACT / UNPAID WAGES**

48. Plaintiff incorporates paragraphs 1 through 28 as if fully set forth herein.

49. Defendant maintained a legally binding policy within its Employee Handbook promising to pay regular employees for unused annual leave (vacation time) upon termination.

50. Plaintiff accrued 240 hours and 24 minutes of unused vacation time prior to his termination.

51. Defendant breached this obligation by failing and refusing to pay Plaintiff for his accrued vacation time upon his termination on March 16, 2026, resulting in economic damages to Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, granting the following relief:

A. Compensatory damages for past and future pecuniary losses, including back pay, front pay, lost retirement accrual, and lost vested benefits;

B. Payment of Plaintiff's 240 hours and 24 minutes of unpaid accrued vacation time;

C. Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

D. Liquidated damages pursuant to the FMLA;

E. Reinstatement to his former position, or front pay in lieu thereof;

F. Reasonable attorney's fees and costs of this action;

G. Pre-judgment and post-judgment interest as provided by law; and

H. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated this 14TH day of SEPTEMBER, 2026.

Respectfully submitted,

/S/ JAY ROMANO

**DISCRIMINATION LAW, P.A.**

**JAY F. ROMANO, ESQUIRE**

Florida Bar No. 0934097

433 Plaza Real, Suite 275

Boca Raton, Florida 33432

(561) 271-1769

jromanopa@gmail.com

*Counsel for Plaintiff, Cordy Isme*